# TIMMY ROYSTON, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Nov. 19, 1969.

Certiorari Denied by Supreme Court Jan. 19, 1970.

Bernard H. Cantor, Johnson City, for plaintiff in error.

George F. McCanless, Atty. Gen., W. Collins Bonds, Asst. Atty. Gen., Nashville, Lewis W. May, Dist. Atty. Gen., Mountain City, for defendant in error.

## OPINION

RUSSELL, Judge.

The defendant below stands convicted of violating T.C.A. § 39-505, which reads as follows:

> *"Setting fire with intent to burn—Penalty.—*If any person set fire to any material or thing, with intent to burn any building, boat, or other thing mentioned in §§ 39-501—39-504, he shall be confined in the penitentiary not less than one (1) year nor more than five (5) years."

His punishment was set at six months in jail, as authorized by T.C.A. § 40-2703.

The crime committed in this instance was the setting fire to the front porch of a dwelling house. Apparently a combustible liquid such as gasoline or kerosene had been poured onto the front porch and set fire to.

All assignments of error except one go to the question of the sufficiency of the evidence to support the conviction. Therefore, we shall summarize the evidence upon which this conviction is grounded.

The plaintiff in error is a young married man, who at the time of this crime was separated from his wife. They had been separated about two weeks. He had previously struck her, and she had him placed under a peace bond. She was temporarily residing in the residence which was set afire on this occasion. At the time of the trial, they were reconciled and were again living together.

This crime was discovered at about 2:25-2:30 a.m. The house was then occupied by Mrs. Lucille Ferguson, her nineteen year old daughter Alice, and defendant's wife. Alice arrived home through the front entrance at about 2:10 a.m.; was met by her mother, and some discussion of the lateness of the hour took place; the mother returned to bed; and Alice continued up, making preparations for going to work the next day. As she started back through the house she looked out the living room window and saw what she first took to be the porch light on; but when she looked out the window she determined that it was a fire. She got her mother back up and Mrs. Ferguson fought the fire. The fire department was called at 2:40 a.m.

The defendant below, Timmy Royston, had spent the entire evening in the company of two other young men, Carl Wiseman and Warren Saylor. They got together about 6:00 p.m. and went to Johnson City and spent the evening riding around in Royston's car. There is evidence that they were drinking beer, and at one time picked up a couple of girls. All three men lived in the Jonesboro area. The defendant lived two miles east of Jonesboro; Saylor lived two or three miles west of Jonesboro; and the house which was fired is in Jonesboro. They passed this house on the way to take Wiseman and

Saylor home. Royston stopped at a Kayo gasoline station in Jonesboro before taking the others home and bought eight cents worth of gasoline and had it put in one of their cans. Wiseman said he got home about 2:15 a.m., and Saylor said that they got the gasoline about 2:00 a.m. and both he and Wiseman were home in not over fifteen minutes more; and that you could travel the two and a half miles from his house to Jonesboro in five minutes.

Saylor, who was and is a friend of the defendant, testified that the defendant said that (referring to his wife) "he was going to get back at her or something for what she'd done." Before the gasoline was bought, this witness said the defendant said, "something about he ought to set the house on fire or something."

The firemen found a Kayo can near the porch that the service station attendant who sold the gasoline said was like the one that the gasoline was put in.

The evidence clearly establishes the corpus delicti. The crime described in the statute was in fact committed.

There is no eye-witness evidence that the plaintiff in error returned to the residence in question, poured the gasoline on the porch, and fired it.

It is undisputed, however, that at a time shortly before this fire was started the defendant was two or three miles west of Jonesboro; that he returned to his home which was two miles east of Jonesboro, therefore being in the vicinity of this house in Jonesboro at the critical time; that he had purchased a can of gasoline at the rather odd hour of 2:00 a.m.; that he had stated to his

friend that he ought to burn the house; and that the house was in fact fired at just the time and in just the way that defendant was apparently preparing to do it.

The defendant admits almost everything that the State proved, except the crime itself and the threat to commit it. He bought the gasoline he says, to clean an engine with. He denies that the can found was the one that he carried the gasoline away from the service station in, saying it was a different color. He says that they went through Jonesboro taking the other boys home about 2:25 a.m. Defendant's father testified that he was in bed at 2:45 a.m.

Clearly, the defendant could have committed this crime. The question is whether or not all of the circumstantial evidence is consistent with his guilt, and inconsistent with any other rational conclusion than that he is the guilty perpetrator. Are the proven circumstances incompatible with his innocence and incapable of explanation upon any other reasonable hypothesis than that of guilty. The jury so found, under a proper charge as to the law.

We think that the totality of circumstances in this case adequately supports the verdict. The crime was committed. Royston had motive and opportunity. He is shown to have made preparation, in buying the gasoline; and is linked to the actual situs of the crime by the Kayo can of like kind to the one that he had just procured a short time before. This unusual type crime is the very thing that he had threatened that very night to do.

██ We are required, on appeal, to reverse a conviction on the facts only when the evidence preponderates

against the verdict of guilty and in favor of the innocence of the accused. McBee v. State, 213 Tenn. 15, 372 S.W.2d 173. We must determine if the State's evidence, now accredited by the jury and trial judge, is legally sufficient to support the verdict. We think that this evidence is legally sufficient; that the circumstantial evidence here is consistent with the guilt of the defendant and inconsistent with his innocence or any other reasonable hypothesis. Thus, the conviction must be sustained. Smith v. State, 205 Tenn. 502, 327 S.W.2d 308.

■ Inferences to be drawn from circumstantial evidence are for the jury, and not this Court. We will not disturb the verdict unless the evidence preponderates against the verdict. Smith v. State, supra. This is not such a case.

The final assignment of error complains of the trial court's allowing Royston's wife to testify, over objection, "to matters transpiring between them." We take it that counsel refers to the following colloquy from the record:

Q. Had your husband made any threats toward * * *

Mr. Cantor: We object to that.

Q. Had your husband made any statements concerning anything that he might do to you?

Mr. Cantor: Now if Your Honor please, we object. Any statements from the husband we claim are privilege (sic) and * * *

The Court: Overruled. If they were separated I don't think they're confidential under the statute. There's a statute that allows the wife to testify. Overruled.

Mr. Cantor: We save exceptions.

Q. What statements, if any, had your husband made to you concerning some violence he may do to you?

A. I hadn't spoken a word to him. I got a peace bond on him the next day after we separated, and he tried to get me to talk to him one time; and he looked like he was about to cry wanting me to come back to him and I said, "No," and turned around and walked off, and then he talked to my girl friend and tried to get her to get me to come back.

Q. Now you got a peace bond proceeding against him. What did you allege against him that made you get the peace bond?

A. Well, we had a fight, and there wasn't much to it. He just smacked me in the face and that was it.

Q. You swore that you were afraid of him in the peace bond, did you not?

A. Uh-huh, I did then.

This assignment of error is without merit. First, it was not incorporated in the motion for a new trial. Rule 14(5) of the Supreme Court, adopted by this Court, says, in part:

"Error in the admission or exclusion of testimony, * * * occurring or committed on the trial of the case, civil or criminal, * * * will not constitute a ground for reversal, and a new trial, unless it affirmatively appears that the same was specifically stated in the motion made for a new trial in the lower court, and decided adversely to the plaintiff in error, but will be

treated as waived, in all cases in which motions for a new trial are permitted; * * *"

To the same effect, see § 455, Caruther's History of a Lawsuit, Eighth Edition.

■■ T.C.A. § 40-2404 provides that in all criminal cases, the husband or the wife shall be a competent witness to testify for or against each other. Excepted from this rule of admissibility is testimony as to any matter occurring between them by virtue or in consequence of the marital relation, or confidential communications between them. McCormick v. State, 135 Tenn. 218, 186 S.W. 95, L.R.A.1916F, 382; Hanvy v. State, 215 Tenn. 322, 385 S.W.2d 752. This rule is based upon the preservation and protection of the home and the peace of families. The rule does not attach to the elements of crimes committed by one spouse upon the other. Here, the parties were separated; the husband struck the wife, and the wife alleged fear of him in obtaining a peace bond against him. The theory of the State in this case is that the husband was attempting to burn the house because his wife was in it. Under these facts, no privilege attached that would prohibit her from relating that he had struck her and that she had sworn that she was afraid of him.

We affirm the judgment of the trial court.

OLIVER and DWYER, JJ., concur.